IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 15, 2001 Session

## PATRICIA D. PARKS v. JULIE NELSON, ET AL.

**Appeal from the Circuit Court for Blount County**
**No. L-10961      W. Dale Young, Judge**

**FILED APRIL 9, 2002**

**No. E2000-02943-COA-R3-CV**

In this appeal from the Blount County Circuit Court the Plaintiff/Appellant, Patricia D. Parks, contends that the Trial Court erred in granting the Motion for Summary Judgment filed by the Defendants/Appellees, Julie Nelson and Nelson Realtors/ Better Homes and Gardens, Inc. Ms. Parks also contends that the Trial Court erred in failing to grant her motion for continuance and in failing to grant her motion to accept a late filed deposition. We affirm the judgment of the Trial Court and remand the case for collection of costs below.

**Tenn. R. App. P 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

Kevin Wayne Shepard, Maryville, Tennessee, for the Plaintiff/Appellant

Candis D. Lasley, Knoxville, Tennessee, and H. Leo Beale II, Maryville, Tennessee, for the Defendants/Appellees

**OPINION**

In this appeal from the Blount County Circuit Court the Plaintiff/Apellant, Patricia Parks, contends that the Trial Court erred in granting motion for summary judgment filed by the Defendants/Appellees, Julie Nelson and Nelson Realtors/ Better Homes and Gardens, Inc. Ms. Parks further contends that the Trial Court erred in failing to grant her motion for continuance and in failing to grant her motion to accept a late filed deposition.

Patricia Parks was employed as the executive vice president of the Blount County Association of Realtors, Inc. (hereinafter 'the Association') from 1978 until February 24, 1997. Julie

Nelson is a realtor in Blount County and serves as an agent for Nelson Realtors/Better Homes and Gardens, Inc. Ms. Nelson is a member of the Association.

In 1995 the Association began searching for a new computer software system to implement the multiple listing service (MLS), an important informational tool which provides realtors with data as to real estate currently for sale on the market. After reviewing information regarding various systems, Ms. Parks advised the Association Board of Directors (the Board) that a system called "Yardi" appeared to be the best system for the Association's purposes. Thereafter, the Board decided to purchase the Yardi system. After having used the Yardi system for a period of time, Ms. Nelson and other members of the Association began expressing their dissatisfaction with the system's performance. In deposition testimony Ms. Parks confirms that there were problems with the system and that these problems continued to exist at the time of her resignation in February of 1997. Ms. Nelson asserts that she felt that Ms. Parks was, along with others, responsible for the problems with the Yardi system and that Ms. Parks was specifically at fault because, according to Ms. Nelson, she failed to abide by the Association's by-laws in selecting the system. In December of 1996 Ms. Nelson began sending faxes critical of the Yardi system to the members of the Association and neighboring associations. Ms. Nelson admits that in these faxes she also requested an audit of the Association and proposed that it be conducted by someone not selected by Ms. Parks. Ms. Nelson also does not dispute that in these faxes she expressed her belief that Ms. Parks should be replaced in her position as executive vice president of the Association nor does Ms. Nelson dispute that in one fax she referred to Ms. Parks as a "pit bull". On December 16, 1996, Ms. Parks fainted at a Board meeting and alleges in her brief that this was in consequence of stress caused by the Defendants. Ms. Parks also asserts it was the stress allegedly caused by the Defendants' campaign against her that forced her to resign from her position as executive vice president the next month, effective February 24, 1997.

On June 4, 1997, and by subsequent amendment on October 2, 1997, Ms. Parks filed a complaint against the Defendants in the Blount County Circuit Court alleging the following causes of action: outrageous conduct, defamation, negligent infliction of emotional distress, invasion of privacy by the publication of facts placing her in a false light, and intentional inducement of breach of contract. On May 18, 2000, the Defendants filed a motion for summary judgment which was set for hearing on September 8, 2000. On September 7, 2000, Ms. Parks filed a motion to continue the hearing on grounds that the Defendants had still not provided certain exhibits to the deposition of Ms. Nelson which had been previously requested by Ms. Parks. The Trial Court denied the motion for continuance, heard arguments of counsel and announced that it would take the summary judgment matter under advisement until September 15, 2000.

On September 15, 2000, Ms. Parks' attorney filed a motion requesting that the Court accept the late filed deposition of Ms. Nelson; however, this motion was denied.

On November 1, 2000, the Trial Court entered its judgment dismissing the case based upon the Defendants' motion for summary judgment.

The issues presented for our review are restated as follows:

1. Did the Trial Court err in granting the Defendants' motion for summary judgment?

2. Did the Trial Court err in denying Ms. Parks' motion to continue the summary judgment hearing?

3. Did the Trial Court err in denying Ms. Parks' motion to accept the late filed deposition of Ms. Nelson?

This is a non-jury case and, accordingly, our review is *de novo* upon the record of the proceedings below. A trial court's conclusions of law carry no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996). There is, however, a presumption of correctness as to a trial court's findings of fact and that presumption must be honored absent evidence which preponderates to the contrary. Tenn.R.App.P. 13(d) and *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

In *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000) the Tennessee Supreme Court stated the following as to the standard of review specifically applicable to summary judgments:

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. See *Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. See *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

In reviewing a trial court's decision to grant a motion for summary judgment our sole task is to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Mason v. Seaton*, 942 S.W.2d 470 (Tenn.1997). In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993) at page 214 the Supreme Court recognized those factors which must be addressed under Rule 56:

> Rule 56 comes into play only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Thus, the issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial. (emphasis in original)

The law in Tennessee further provides that summary judgment is properly entered against a party who fails to establish the existence of an element essential to that party's case and that, "[i]f the non-moving party fails to establish the existence of an essential element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Laws v. Johnson* 799 S.W.2d 249 (Tenn. Ct. App. 1990). Accordingly, should we determine that Ms. Parks has failed to establish an element essential to any one of the causes of action set forth in her complaint we must affirm the Trial Court in granting a summary judgment in favor of the Defendants as to that cause of action.

We first address Ms. Parks' asserted cause of action for outrageous conduct. The law in Tennessee provides that in order to establish liability for outrageous conduct, or intentional infliction of emotional distress, a defendant's conduct must be shown to have been "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community." *Medlin v. Allied Investment Co.*, 398 S.W.2d 270 (Tenn. 1966). In order to establish a cause of action for the tort of outrageous conduct which survives a motion for summary judgment a plaintiff must allege conduct that satisfies an extremely high burden. *Pollard v. E.I. Dupont de Nemours Co.*, 213 F.3d 933 (6th Cir. 2000), *rev'd on other grounds*, 121 S. Ct. 1946 (2001). We do not find that that burden has been satisfied in the case before us.

Ms. Parks first asserts that the affidavit of Vickie Taylor, a licensed clinical social worker from whom she received treatment for stress, "describes not only the outrageous behavior, but also the damaging consequences of [Ms.] Nelson's behavior." This affidavit incorporates an evaluation report which attests that Ms. Parks suffers from "adjustment disorder with mixed anxiety and depressed mood" and describes symptoms exhibited by Ms. Parks such as nervousness and sleep disturbance. The report further attests that these maladies are the result of certain described conduct of Ms. Nelson. Tenn. R. Civ. P. 56.06 provides that an affidavit submitted in opposition to a motion for summary judgment "shall be made on personal knowledge, such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Although Ms. Taylor may properly attest to Ms. Parks' symptoms based upon her personal observation of those symptoms, she may not properly attest to the conduct she attributes to Ms. Nelson because Ms. Taylor's description of that conduct is evidently based solely upon information received from Ms. Parks rather than upon her own personal knowledge.

Ms. Parks also submits her deposition testimony wherein she testifies that Angela Hart, the daughter of an agent of Nelson Realtors had used the phrase "hate Patty campaign". It is not necessary that we determine whether the use of this phrase constitutes conduct "so extreme in degree as to go beyond all bounds of decency" because we find such evidence to be otherwise insufficient in that it is not based upon Ms. Parks' personal knowledge of what Angela Hart did or did not say but rather upon what Ms. Parks states that she was told by Nelda Camper, a third party.

Q  Now, where did the term hate Patti campaign come from?

A  It was used in her office one night and overhead by an agent.

Q  By whom?

A  Nelda Camper.


Finally, Ms. Parks contends that paragraphs seven through eleven of her complaint make specific allegations of outrageous conduct. "Such specific allegations showing that Julie Nelson, the Appellee, actively sought to have Parks fired, and that others associated with her referred to the 'Hate Patty Campaign.'  Other statements imply that Parks' had embezzled funds, and the Appellee's behavior reached a climax when she began sending out facsimiles to more than 200 members of the Realtors Association, as well as other neighboring associations, including the Knoxville area."  It is unnecessary that we determine whether these allegations, if true, would support Ms. Parks' cause of action for outrageous conduct because Tenn. R. Civ. P. 56.06 specifically provides that a party responding to a motion for summary judgment may not rest upon the mere allegations of his pleadings "but his or her response, by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial."

It is our conclusion that Ms. Parks has failed to submit proof which establishes that there is a genuine issue of material fact as to her cause of action for outrageous conduct  and; therefore, the Trial Court's grant of summary judgment in that regard was proper.

In her second cause of action Ms. Parks asserts that Ms. Nelson engaged in conduct which constitutes defamation.

In the case of *Press, Inc. v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978) the Tennessee Supreme Court adopted the Restatement (Second) of Torts (1977) § 580B which states in pertinent part as follows:

> §580B. Defamation of Private Person.  One who publishes a false and defamatory communication concerning a private person ...is subject to liability, if, but only if,  he
> (a) knows that the statement is false and that it defames the other,
> (b) acts in reckless disregard of these matters, or
> (c) acts negligently in failing to ascertain them.

We further note that for many years Tennessee law has recognized a qualified privilege  with respect to communications made under certain conditions as set forth in *Southern Ice Co. v. Black*, 189 S.W. 861 (Tenn. 1916) at page 863:

> Qualified privilege extends to all communications made in good faith upon any subject-matter in which the party communicating has an interest, or in reference

to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation .... The rule announced is necessary in order that full and unrestricted communication concerning a matter in which the parties have an interest may be had. It is grounded in public policy as well as reason.

When a statement is qualifiedly or conditionally privileged it is not actionable, even though defamatory, absent actual or express malice, proof of which requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication, and that publishing, with such doubt, shows reckless disregard for truth or falsity and demonstrates actual malice." *Pate v. Service Merchandise Co., Inc.*, 959 S.W.2d 569 (Tenn. Ct. App. 1996).

Ms. Parks asserts that evidence of expressly communicated defamatory statements by the Defendants is provided in her deposition testimony describing the so-called "pit bull fax"in which Ms. Nelson allegedly implied that Ms. Parks was embezzling Association funds. However, here again, Ms. Parks' testimony regarding the contents of this fax is not based upon her personal knowledge but rather upon information received by her from a third party. Ms. Parks testifies that she does not have a copy of this fax and that she has never seen it and, therefore, her testimony does not constitute competent evidence as to the nature of any statements which it might have contained.

Ms. Parks further directs our attention to that portion of her deposition wherein she testifies regarding another fax dated December 10, 1996, which she also asserts contains defamatory statements by Ms. Nelson that indicate that Ms. Parks is a liar. Although a copy of this fax is not included in the record before us, we discern from our review of Ms. Parks deposition that it was evidently a fax that was sent to various brokers requesting a meeting of the Association. And although Ms. Parks does not so specify in her brief, we surmise that the statement complained of is related to Ms. Nelson's expression of her belief that an agent, "Donnie", had misrepresented that he had received certain information from another agent in Morristown while, in actuality, he had received the information from Ms. Parks who had received the information from "the executive officer" in Morristown. Ms. Parks testifies that she did *not* receive the information from the executive officer in Morristown and that she stated in a meeting of realtors that she did not receive the information from the executive officer in Morristown. Ms. Parks appears to contend that the implication of Ms. Nelson's statement is that Donnie lied about the source of the information at Ms. Parks' instruction and that Ms. Parks lied when, at the meeting of realtors, she denied receiving the information from the executive officer in Morristown. However, later in her deposition Ms. Parks testifies that it was *after* December 10, 1996, the date the fax was sent, that Ms. Parks stated that she had not gotten the information from the executive officer in Morristown. Since, at the time the fax was sent, Ms. Parks had not yet made her statement at the realtors meeting the fax could not possibly have implied that she lied in making that statement.

Ms. Parks next recites various statements which were admitted by the Defendants - that Ms. Nelson expressed concerns over Ms. Parks job performance, requested an audit of the Association,

suggested that the auditor not be selected by Ms. Parks and expressed her opinion that Ms. Parks should be replaced as the Association's executive vice president. However, none of these admissions constitutes evidence that Ms. Nelson publicized false and defamatory communications regarding Ms. Parks as would be required to sustain a suit for defamation.

Finally, Ms. Parks contends that Ms. Nelson, "by the nature and tone of the facsimiles which she transmitted to over 200 individuals, implied that Patty Parks, in her position with the Association, had embezzled or made unauthorized purchases for the Association." None of these faxes were provided to this Court and our only means of determining their content is by the uncontested testimony and admissions contained in the record before us. In her brief, Ms. Parks does not indicate which faxes imply that she embezzled or how the "nature and tone" of any fax carried the implication that she embezzled and we fail to find proof in the record which adequately supports this allegation. As to the allegation that Ms. Nelson implied that Ms. Parks made unauthorized purchases, here also Ms. Parks fails to specify which fax carries this implication or in what sense "the nature and tone" of any fax implies that Ms. Nelson made unauthorized purchases. Furthermore, it is our determination that both Ms. Nelson and her co-realtors have an interest in the procedure followed with respect to the Association's purchases of goods or services and; therefore, communications on that subject are conditionally privileged. Such communications even though false are not actionable without proof of actual malice and we find no such proof in this record.

Ms. Parks next asserted cause of action is that of negligent infliction of emotional distress. In order to establish a claim for personal injury negligently inflicted by a defendant, a plaintiff must show that the defendant owed the plaintiff a duty of care, that the defendant negligently breached that duty and that the plaintiff received injuries as a proximate result of such breach. Nowhere in the record do we find evidence which would support a finding that the Defendants negligently breached a duty of care to Ms. Parks. In that portion of her complaint which specifically pertains to this cause of action Ms. Parks asserts that the Defendants "had a duty to treat Parks with respect and courtesy." Although it is hoped that all persons would choose to treat others with courtesy and respect, we do not find that there is a duty to do so, nor does Ms. Parks establish a basis for this asserted duty. Ms. Parks does not state exactly what specific conduct on the part of the Defendants forms the basis of her assertion that the Defendants are guilty of negligent breach of a duty and our review of the record does not disclose competent evidence to support that assertion.

For her next cause of action Ms. Parks states that the Defendants have invaded her privacy by the publication of matters which place her in a false light. A cause of action for false light invasion of privacy arises "when the plaintiff or aspects of [her] life have been presented in a misleading manner that would be highly offensive to a reasonable and prudent person." *International Union v. Garner*, 601 F.Supp. 187 (M.D. Tenn. 1985). In support of this cause of action, Ms. Parks alleges in her brief that Ms. Nelson and her business sent out faxes implying that Ms. Parks could not be trusted with financial matters and that she had misused her position as it relates to financial matters .As stated, Ms. Parks presents none of these faxes for our review and we do not find proof in the record sufficient to otherwise support this allegation.

As her final cause of action Ms. Parks charges that Ms. Nelson induced her to resign from her position as executive vice president in violation of T.C.A. 47-50-109 which provides in pertinent part:

> It is unlawful for any person, by inducement, persuasion, misrepresentation or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto;

There is no evidence in the record that the Association either terminated Ms. Parks employment or suggested that she resign and it appears from her deposition testimony that she resigned of her own volition. It is undisputed that there was no written contract of employment between Ms. Parks and the Association and, if there was an implied contract, as asserted by Ms. Parks, there is no indication that it was breached by the Association. If a contract was breached under the facts in this case it was breached by Ms. Parks. This Court has heretofore stated that in a cause of action under T.C.A. 47-50-109 "the proper plaintiff is the contracting party injured by the breach, not the breaching party." *Oak Ridge Precision v. First Tenn. Bank*, 835 S.W.2d 25 (Tenn.Ct. App. 1992). As the breaching party Ms. Parks cannot properly maintain her action for inducement of breach of contract. Had there been a valid cause of action for inducement to breach an employment contract between Ms. Parks and the Association in this case the proper plaintiff would have been the Association, not Ms. Parks.

We also note that under the law in Tennessee one of the elements of a cause of action for breach is that the wrongdoer must have known of the existence of the contract. *Smith v. Harriman Util. Bd.*, 26 S.W.3d 879 (Tenn. Ct. App. 2000). As stated, there was no written employment contract between the Association. Although Ms. Parks alleges in her complaint that "Nelson knew about the valid contract of employment between Parks and the Association" and contends in her deposition testimony that she had an oral contract with the Association she presents no proof that the Defendants knew of this alleged oral contract. In her brief Ms. Parks merely asserts that "Nelson, as a member of the Association, knew of Parks' position, and furthermore, set out to have her removed from that position". It does not follow from the fact that Ms. Nelson knew of the position held by Ms. Parks in the Association that she also knew of the existence of an oral employment contract between those parties.

In addition to her argument that summary judgment was specifically improper as to each of the causes of action addressed above, Ms. Parks asserts that the response which she filed to the Defendants' statement of material facts shows that there were genuine issues of material fact and that summary judgment was also improper for that reason.

The Tennessee Supreme Court defined 'material fact' in *Byrd v. Hall*, 857 S.W.2d, *supra,* at page 215:

> A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed. Therefore, when confronted

with a disputed fact, the court must examine the elements of the claim or defense at issue in the motion to determine whether the resolution of that fact will effect the disposition of any of those claims or defenses.

Our review of Ms. Parks' response to the concise statement of material facts filed by the Defendants in this case reveals that she disputes the Defendants' statement that the fact that "[she] worked for the Association from 1978 to February 28, 1997, at which time she resigned her employment from the Association." appears in paragraph 5 of her complaint. Ms. Parks does not dispute the factual matter contained in the statement but only the immaterial fact of where such statement is located in the pleadings.

Ms. Parks additionally argues that she disputed the following statement as set forth by the Defendants in their statement of material facts to which there is no genuine issue:

The Association by-laws require that any expenditure over $1,000.00 not specifically budgeted to be approved by the general membership. (Deposition of Patricia D. Parks dated October 20, 1998, p. 79)

In her response, Ms. Parks asserts that this statement does not appear as identified by the Defendants. Our review of page 79 of the deposition confirms that this statement does not appear as identified by the Defendants; however, it is clear from our foregoing analysis of the causes of action asserted by Ms. Parks in this case that resolution of the fact asserted by the Defendants in this instance is not necessary to disposition of those causes of action. Accordingly, we do not find that Ms. Parks suffered any prejudice.

Finally, Ms. Parks' response disputes the Defendants' statement that "[i]n 1996, the Board of Directors for the Blount County Association of Realtors entered into a contract to purchase the Yardi MLS system for approximately $65,000.00 without first obtaining the general membership approval" Ms. Parks' stated grounds for disputing this statement are that the Defendants have identified the incorrect year and that pages from her deposition "show that the membership voted to approve the necessary expenditure, although not necessarily with the Yardi real estate listing service, and that the expenditure was for $10,000.00 per year." Rule 56.03 provides that "[e]ach disputed fact must be supported by specific citation to the record." The pages of Ms. Parks deposition which she attaches to her response in support of her dispute of the Defendants' statement contain no evidence regarding the Board's entry into a contract to purchase the Yardi system or when such contract was entered into. Accordingly, we find that Ms. Parks' response does not dispute the statement set forth by the Defendants.

It is our conclusion, after reviewing the record before us, that the Trial Court did not err in granting the Defendants' motion for summary judgment in this matter and all of Ms. Parks' arguments to the contrary are without merit.

The next issue we address in this case is whether the Trial Court erred in denying Ms. Parks' motion to continue the summary judgment hearing of September 8, 2000. Ms. Parks filed her motion to continue on September 7, 2000, on the basis that the Defendants had still not provided certain exhibits to the deposition of Ms. Nelson which had been previously requested by Ms. Parks. Although the Trial Court denied the motion for continuance and heard argument regarding the motion for summary judgment , the Court also determined, by interrogation of the parties' attorneys, which exhibits remained unfiled and directed the Defendants to furnish such exhibits by September 12, 2000. In addition, the Court instructed Ms. Parks' attorney that if he felt there was need for further conversation after reviewing the exhibits he should contact the Court's secretary and, if necessary, another hearing would be scheduled. The Court took the summary judgment matter under advisement, announcing that if it had heard nothing from Mr. Parks' attorney by September 15, 2000, it would proceed to render its decision as to summary judgment based upon the arguments and evidence presented at the hearing. Ms. Parks' attorney conceded at a subsequent hearing before the Court on September 29, 2000, that the late filed exhibits do not create any additional disputed issues of material fact and there is no indication that Ms. Parks' attorney contacted the Court's secretary as he was instructed to do should he find that the exhibits contained information which merited further conversation or the scheduling of an additional hearing. Under the circumstances we find that Ms. Parks suffered no prejudice in consequence of the Court's denial of her motion for continuance and that any error which the Court might have committed in its denial of such motion was harmless.

The last issue we address is whether the Trial Court erred in its denial of Ms. Parks' motion to accept the late filed deposition of Ms. Nelson, which motion was filed on September 15, 2000.

Rule 56.04 requires that opposing affidavits be filed not later than five days before the time fixed for the hearing on the motion for summary judgment; however, the record does not show that Ms. Parks made any attempt to file the deposition of Ms. Nelson prior to the September 15 motion. In that motion Ms. Parks asserts that the reason for the delayed filing was that she was waiting to receive the late filed exhibits to the deposition. However, at the hearing on the motion on September 29, 2000, Ms. Parks attorney admitted that there was nothing to prevent the timely filing of Ms. Nelson's deposition other than a preference that the deposition and the exhibits be filed together:

    THE COURT: ...You had the deposition. You could have filed that.

    MR. SHEPARD: Yes, we could have, and in all honesty and candor with the
    Court we could have filed that. Nothing kept us from doing that except that we
    had stated and wanted to file the exhibits with the deposition.

Ms. Parks' preference does not constitute sufficient grounds for the late filing of Ms. Nelson's deposition and we find no basis otherwise for finding that the Trial Court erred when it refused to grant Ms. Parks' motion to the deposition as late filed. Also, although the deposition of Ms. Nelson

was not admitted in evidence, it appears in the record.  We have reviewed it and it is our determination that Ms. Parks was not prejudiced by its exclusion.  Therefore, we find that, if the Trial Court did err in denying Ms. Parks' motion to accept the deposition, such error was harmless.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below.  Costs of appeal are adjudged against Ms. Parks and her surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE