IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 2, 2003 Session

# MEAJI  LYNN NISLEY LOCKMILLER v. MARK DOUGLAS LOCKMILLER

**Appeal from the Circuit Court for McMinn County**
**No. 24409    John B. Hagler, Judge**

**Filed December 30, 2003**

**No. E2002-02586-COA-R3-CV**

In this divorce case, the parties contested, among other things, the issues of divorce and the custody of their minor children, Victoria Grace Lockmiller (DOB: August 27, 1994) and James Roman Lockmiller (DOB: November 24, 1998).  Expressing its belief that Mark Douglas Lockmiller ("Father") would not tell "a knowing untruth," the trial court granted him a divorce from Meaji Lynn Nisley Lockmiller ("Mother") on the ground of inappropriate marital conduct and designated him as the primary residential parent of the parties' children.  Wife appeals, contending[1] that the evidence preponderates against the trial court's award of primary custody to Father.  We affirm.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Wanda G. Sobieski, Diane M. Messer, and Donna C. Looper, Knoxville, Tennessee, for the appellant, Meaji Lynn Nisley Lockmiller.

Randy G. Rogers, Athens, Tennessee, for the appellee, Mark Douglas Lockmiller.

---

[1]Mother states her issue as follows:

> Whether in the face of overwhelming and undisputed evidence that Appellee subjects his children to physical and emotional harm, the trial court's award of custody to Appellee, apparently to punish Mother for her relationship with her supervisor, should be reversed.

Since Mother contends, in effect, that the trial court was wrong on the facts, the issue is properly framed in terms of whether the evidence preponderates *against* the trial court's determinations.  *See* Tenn. R. App. P. 13(d).  Attorneys should avoid framing their issues in argumentative terms.  Arguments are best left to the argument section of the brief.

**OPINION**

I.

The trial of this hotly-contested divorce case extended over six days, *i.e.*, June 18, 19, 20, 21, 2002, and July 15 and 16, 2002. In addition to the main divorce hearing, the trial court conducted an earlier single-day hearing on the issue of who should be the temporary residential parent of the children,[2] and a post-trial hearing on November 25, 2002, in response to the "Emergency Petition for Change of Custody" filed by Mother's new counsel.[3] In addition, the record before us reflects that a hearing occurred on April 22, 2002; but apparently there was no oral testimony at that hearing bearing upon the issue now before us or, if there was such testimony, it was repeated at one of the other hearings. In any event, we do not have a transcript of that hearing.

The trial court heard from both parties and some 19 other witnesses, some of whom were presented by Mother and some of whom testified at the call of Father. The transcript of the divorce trial is in eleven volumes and covers 1,610 pages. We state all of this to demonstrate the thoroughness of the presentation by both sides and the quantity of the testimony considered by the trial court. The record before us reflects that everyone had their "say" and that the trial court listened patiently to the evidence presented by both sides.

II.

At the conclusion of the divorce trial, the court below rendered its decision from the bench pertaining to the issues of divorce, custody, and other matters.[4] The court's oral comments were later attached to, and made a part of, the trial court's judgment of divorce. The judgment was entered below on October 1, 2002. In the course of its remarks from the bench, the trial court made the following comments:

> It has been a very difficult case. It's, I guess, the longest case I've tried. But I've listened to the evidence very carefully. I have reviewed the evidence. I have observed the parties very carefully during the course of the proceedings.
>
> *    *    *    *
>
> [I]n a case like this, it is primarily the two parties who make or break the case, and the attorneys cannot do anything about that. There are

---

[2]Mother was designated as the temporary residential parent following the hearing of January 25, 2002.

[3]Mother's appellate attorneys were not involved in the proceedings that occurred prior to the filing of the emergency petition.

[4]There are no issues before us as to these "other matters."

other witnesses who are important. But in the end, it's probably the Court's assessment of the individual parties that counts more than anything else in a case like this.

First, with respect to the divorce, the Court grants the divorce to the husband and dismisses the complaint of the wife.

The Court is of the opinion that the primary cause of the break-up in the marriage is the wife's new relationship.

The husband does have some problems with temper, I think. But I think that his worst temper, which he did admit, was when he felt that his wife had taken up with someone else. He was very upset about it and understandably so. I think many – I'll say most of the earlier incidents regarding his temper and his behavior have been grossly exaggerated, in the Court's opinion.

I'll put it this way: In weighing the testimony of the two parties and their own perceptions, I feel that Mr. Lockmiller told the truth far more than Ms. Lockmiller.

I think he's probably more stubborn than he realizes, and perhaps he does have a stronger temper. But I don't think that Mr. Lockmiller would tell a knowing untruth, and I don't think he ever did when he testified. I think he's a man of strong, truthful character.

I do not think that Ms. Lockmiller was truthful about the – her relationship with this other man. I think it started earlier. I think it's had a great effect on her characterization of events.

I do not – I think that she was completely untrue in the January – or the testimony in the January hearing was completely untrue about her fear for the children.

I didn't bring it out here with me, but I wrote down that a couple of times she indicated – she stated that she took the children out of town, once to her aunt's and to some other place, and told the Court that she did that because she wanted them to be safe from her husband. And she has never feared for the safety of the children in the presence of her husband. I think that was a pure fabrication.

Also, it may seem to be a small point, but the Court was very bothered by some shoplifting incidents which are minor but they

-3-

certainly affect a person's credibility. I think that Mr. Lockmiller and the other witnesses who testified to that were telling the absolute truth. It was disturbing, and it affected the Court's assessment of Ms. Lockmiller's credibility.

She obviously was unhappy in the marriage. I don't know if this was before or after meeting Mr. Rouse.

I know this, that Mr. Lockmiller's conduct was never proven by a preponderance of the evidence to constitute cruel and inhuman treatment. His concept of putting his wife on a pedestal might be someone else's concept of excessive possessiveness, but it is certainly not cruel and inhuman treatment. I think he did trust and respect his wife, and I think he was very upset at the break-up of the marriage.

I do not believe that he rejected counseling. I believe that he was placed in a position so that Ms. Lockmiller could testify that he rejected counseling because she wanted a divorce. I think he wanted to save the marriage, and I think that he would have entered into meaningful counseling, and I don't think that that was offered to him.

I know the most important issue to the parties is who will be the residential parent.

Again, I cannot state too much how concerned I am about the bitterness which this case has generated. I'll say I think a great deal of the bitterness is justified. But somehow it must be overcome, because if anybody continues to try to punish someone, the children are going to suffer.

The Court does not make a determination of residential parenting in order to punish a parent. And it certainly would not do that in this case because these are both good, fit parents. Despite everything that's been said here, these are both caring parents. The children are in no danger from either one of them, and they need both parents.

But having weighed all the evidence in this case and having looked at all the factors that the Court is required to look at under the statute, I am convinced by a preponderance of the evidence that the father is the fitter parent to be the residential parent in this case.

He has been a strong caregiver, much more so than many fathers to whom custody has been awarded, in my experience. And now that

this is behind them, I believe that he is more likely than the mother would be to ensure that the children have a good relationship with the other parent.

In other words, I trust him more to ensure that the children have quality time and a quality relationship with the mother than I would trust the mother at this particular time.

He's a teacher. He's involved with children. I find nothing in the evidence that would indicate anything other than that he was a good teacher. He has been involved in the children's activities. That's not to say the mother has not been, but he has been very involved and he's been involved in a very positive, constructive way.

He has strong family support. I did not think that he's a father who is seeking custody of his children to please his mother or because his mother is doing that. I think he's doing that because he feels that that is his obligation. But I think he's fortunate in the support that he has.

I felt that his family members did make good witnesses. Again, there's some harshness there, but I think they feel that their family has been stepped on and demeaned, and they're justified, as I've said, in some of that. Again, I hope they can overcome that.

Another factor that I think strongly argues in favor of the father is that the children will be able to remain in the same environment that they have been in.

As will become clear later in this opinion, the trial court's credibility determinations play a significant role in our appellate review of this case.

III.

Our review of this bench trial is *de novo* upon the record of the proceedings below, but the record comes to us accompanied by a presumption that the trial court's findings of fact are correct. Tenn. R. App. P. 13(d). This is a presumption that we are duty-bound to honor unless the evidence preponderates against those findings. *Id.*

The credibility of witnesses is a matter that is peculiarly within the province of the trial court. *See* **Bowman v. Bowman**, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991). That court has a distinct advantage over us: it sees the witnesses *in person*. Unlike an appellate court – which is limited to a "cold" transcript of the evidence and exhibits – the trial court is in a position to observe the demeanor of the witnesses as they testify. This enables the trial court to make assessments regarding

-5-

a witness's memory, accuracy, and, most importantly, a witness's truthfulness. The cases are legion that hold a trial court's determinations regarding witness credibility are entitled to great weight on appeal. *See, e.g.*, ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995). In the absence of unrefuted authentic documentary evidence reflecting otherwise, we are loathe to substitute our judgment for the trial court's findings with respect to the credibility of the witnesses.

"Trial courts are vested with wide discretion in matters of child custody . . . ." ***Varley v. Varley***, 934 S.W.2d 659, 665 (Tenn. Ct. App. 1996) (quoting ***Koch v. Koch***, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993)). This being the case, we will not reverse a trial court's decision regarding custody unless the record clearly demonstrates that the court has abused its discretion. ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 442 (Tenn. 1992). As the Supreme Court has cautioned, "a discretionary judgment of a trial court [should not be disturbed] unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining." ***Marcus v. Marcus***, 993 S.W.2d 596, 601 (Tenn. 1999) (quoting ***Ballard v. Herzke***, 924 S.W.2d 652, 661 (Tenn. 1996)).

When making child custody decisions, courts are admonished to make decisions that "promote children's best interests by placing them in an environment that will best serve their physical and emotional needs." ***Nelson v. Nelson***, 66 S.W.3d 896. 901 (Tenn. Ct. App. 2001) (quoting ***Gaskill v. Gaskill***, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996)).

In making custody decisions, courts must consider, to the extent pertinent, the following statutory factors:

> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . . .
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;

\* \* \* \*

-6-

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], . . . , against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of fact connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code. Ann. § 36-6-106 (2001). Further, a court must consider "the parents' demeanor and credibility during the divorce proceedings." *Nelson*, 66 S.W.3d at 901 (quoting *Gaskill*, 936 S.W.2d at 631). Because trial courts are afforded broad discretion in determining child custody, we are disinclined to "second-guess" a trial court's decision in such matters. *Id.*

A court is not permitted to punish an adulterous parent for "an extramarital affair by awarding custody" to the other parent. *Sutherland v. Sutherland*, 831 S.W.2d 283, 286 (Tenn. Ct. App. 1991). In other words, "[a] parent's sexual infidelity or indiscretion does not, *ipso facto*[,] disqualify that parent from receiving custody of his/her children." *Nelson*, 66 S.W.3d at 902 (quoting *Varley*, 934 S.W.2d at 666-67); *see also Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). However, in applying the statutory factors set forth in Tenn. Code Ann. § 36-6-106(a), a court "may consider the effect of a parent's extramarital affair on the [c]hildren and on the parent's fitness as a custodian." *Nelson*, 66 S.W.3d at 902. When the parent's activities "involve neglect of the children, however, such neglect is a consideration in determining the children's best interests." *Id.* (quoting *Varley*, 934 S.W.2d at 667); *see also Mimms v. Mimms*, 780 S.W.2d 739, 745 (Tenn. Ct. App. 1989).

# IV.

In the instant case, there is an abundance of evidence that there is "love, affection and emotional ties existing between [both] parents and [their] child[ren]." *See* Tenn. Code Ann. § 36-6-106(a)(1). No witness testified to the contrary with respect to either parent.

The trial court believed the testimony of Father. This being the case, we accept as true the trial court's implicit finding that Father is a parent who was and is intimately involved in his children's lives. From changing diapers to bathing the children and doing their laundry, Father has been there for his children. It is clear from the proof that he has always been a very active parent. He takes the children to church. He has participated in discussions with his daughter's teacher. On several occasions, he took his daughter to school and got her there on time, something that cannot be said about Mother. Because both parents worked and Father got off from work earlier than Mother, he would typically pick up his daughter after school. *See* Tenn. Code Ann. § 36-6-106(a)(2).

Father took his daughter to ballet lessons and helped her get into her ballet uniform. He also took her to her Little League basketball practices and attended her cheerleading practices. He was there when she cheered for the Little League football team. *Id*.

Mother tried to paint Father as an out-of-control, angry individual, whose children feared him. Father's testimony was to the contrary. The trial court believed Father when he said the children did not fear him; furthermore, the trial court held that the testimony regarding Father's anger problems was greatly exaggerated. In this regard, it is interesting to note that Mother never testified that Father was violent with or toward her.

It is true that – as he admitted – Father left a bruise on his son's buttocks from a very inappropriate spanking when the child was only 18 months old. Father testified that he now greatly regrets this inappropriate behavior on his part. While he freely admitted that he is a disciplinarian and that he spanks his children, he denied any other incidents that caused bruises to appear or incidents that could be reasonably construed as child abuse. It is clear from the testimony that, save the one "bruising" incident, Mother never really complained, prior to the breakup of the parties' marriage beginning in early 2001, about Father's disciplining of the children. As the trial court intimated, all of this got to be a much bigger thing with Mother after she developed an interest in another man.

The trial court found that the spanking incident that led to Mother's post-trial "emergency" petition did not amount to abuse. The evidence does not preponderate against this finding.

The trial court recognized that Father and his nearby family were important for the children. *See* Tenn. Code Ann. § 36-6-106(a)(4). He also found, and the evidence does not preponderate otherwise, that Father seems more predisposed than does Mother to foster a relationship between the children and the other parent. *See* Tenn. Code Ann. § 36-6-106(a)(10).

-8-

V.

We have carefully considered the testimony and documentary evidence in this case. In doing so, we are mindful of our *appellate* role and our need to give deference to the trial court's credibility determinations. That court believed Father. It did not place a great deal of stock in Mother's truthfulness. When we factor in the trial court's credibility determinations, we do not find that the evidence preponderates against the trial court's holding that Father "is the fitter parent to be residential parent in this case."

VI.

At the end of the argument section of her brief, Mother seeks expanded visitation. This matter was not presented in the issue section of that brief. In any event, this is an issue that is more properly addressed to the trial court.

VII.

The judgment of the trial court is affirmed. Costs on appeal are taxed to Meaji Lynn Nisley Lockmiller. This case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE