IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 13, 2005

## SHERRY KAY HEPLER v. DONALD MERLE HEPLER

**An Appeal from the Circuit Court for Davidson County
No. 00D-1373     Muriel Robinson, Circuit Judge**

---

**No. M2004-00530-COA-R3-CV - Filed October 25, 2005**

---

This is a petition to modify custody. When the parties divorced in 2000, the mother received primary custody of the parties' three children. After the mother sought an increase in the father's child support obligation, the father filed this petition to obtain primary custody of the children, alleging a material change in circumstances. The father later amended his petition to include allegations of physical abuse by the mother. The trial court declined to modify custody, finding the evidence insufficient to justify modification. We vacate the ruling of the trial court and remand for written findings on the abuse allegations, pursuant to Tennessee Code Annotated Section 36-6-106(a)(8).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S. and ALAN E. HIGHERS, J., joined.

Clark Lee Shaw and Stephanie C. Hatchett, Nashville, TN, for the appellant, Donald Merle Hepler.

Pamela M. Spicer, Brentwood, TN, for the appellee, Sherry Kay Hepler.

### OPINION

Petitioner/Appellee Sherry Kay Hepler ("Mother") and Respondent/Appellant Donald Merle Hepler ("Father") were divorced on September 13, 2000. A marital dissolution agreement, incorporated into the final decree, provided for joint custody of the couple's three minor children and designated Mother as the primary custodial parent. Pursuant to that agreement, Father paid child support bi-weekly in the amount of $427.38.

On February 20, 2002, Mother filed a petition seeking an increase in Father's child support obligation. In response, Father filed a counter petition which, in part, sought custody of the three children, alleging a material change in circumstances. Father's counter petition cited his recent remarriage and asserted that he was able to provide a more stable home environment for the children, and also alleged problems regarding Mother's care for the children.

In an order dated May 10, 2002, the trial court found that the new child support guidelines mandated that Father pay increased child support. Consequently, Father's child support obligation was increased to $555.69 bi-weekly. Two weeks later, Mother answered Father's counter petition for a change of custody. Nothing further occurred until April 7, 2003, at which time Father filed a reply to Mother's response asserting that a substantial and material change in the parties' circumstances justified modification of the child custody arrangement.

Three days later, on April 10, 2003, Father filed a request for an order of protection on behalf of the children, asserting that Mother had struck one of the children in the face and caused an injury to the child's nose that necessitated medical attention, and alleging other objectionable conduct by Mother. On April 22, 2003, pending a full hearing on the matter, the trial court entered a temporary restraining order, enjoining Mother from using any corporal punishment on the children. The matters were set to be heard on September 24, 2003.

On the appointed date, the trial court conducted the custody modification hearing. At the hearing, Father testified that Mother had been criminally charged with child abuse in connection with the incident in which the parties' child was struck in the face. Father testified that Mother had not informed him of the incident and would not discuss it with him, and that her trial on the charges had not yet occurred. Father also asserted that Mother had been telling the parties' children that his current wife was poisoning their food, and that as a consequence the children refused to eat food prepared by Father's current wife when the children were at Father's home. Father testified about other concerns as well, such as Mother having had a boyfriend living at her home with the children and Mother failing to obtain appropriate treatment for a child's medical problem.

Mother was called to testify by Father's counsel. Regarding the incident in which the child was struck, Mother testified that when she arrived after work at the home of the children's babysitter, Francis Drennen ("Drennen"), Drennen accused Mothers's ten-year-old daughter of unruly behavior and of lying. Mother and the ten-year-old had words, and Mother said she reached the point of not wanting to hear anything further from the child. Mother testified that she then "put my hand up and when I did I guess I put my hand too far on her face, and I hit her nose. . . . A few seconds later her nose started to bleed." She said that the bleeding stopped before they left Drennen's home, but started again that evening, so she took the child to the emergency room. Asked if she told her daughter that she hoped her nose was broken, Mother testified, "I might have in the moment of being upset" and asserted that she had apologized to the child for the remark. Mother denied telling the children that Father's current wife was poisoning them, asserting that she had only commented to the children that they were "always sick" when they returned from Father's house, and that she asked the children about the foods they ate while at Father's home.

The trial court then heard testimony from the babysitter, Drennen, who lived in the same trailer park as Mother. When asked about the incident in which the ten-year-old's nose was injured, Drennen said that when Mother arrived at Drennen's home after work, she told Mother that she had disciplined the ten-year-old. Drennen testified that Mother "was mad and she hit [the child] in the nose and blood just started gushing." She indicated that Mother struck the child with a closed fist.

Drennen said that Mother then told the child, "I hope I broke your nose and I hope it bleeds." Drennen said that Mother later admonished the children not to say anything to Father about the incident or they would probably end up living with Father and there would be less money for them. Drennen testified that on other occasions she had seen Mother strike another daughter in the face. Drennen asserted that she had heard discussions between Mother and the parties' children in which Mother expressed the belief that Father's current wife was poisoning them and in which Mother made disparaging remarks about Father.

Father's current wife, Beula Evelyn Hepler ("Stepmother") testified as well. Stepmother testified that, for a time, the children would not eat the foods she prepared. She said that the situation was remedied when she tasted the food in the children's presence; after that, they would eat. Stepmother acknowledged knowing that the parties' oldest daughter had allergies and asthma, and conceded that she and Father had a variety of pets. She also admitted that she and Father smoke, but maintained that they did not smoke inside their home while the children were there.

After the close of Father's proof, the trial court found that the evidence was insufficient to grant Father's petition to change custody. Elaborating, the trial judge stated that while "I understand Mr. Hepler's concerns. . .the problem was he didn't have a specific order really to have her, technically, in contempt to visitation order violation." Although the trial judge strongly admonished Mother about striking the children and warned that the outcome of the custody proceeding would be different in the future if Mother were indicted and convicted of child abuse, the trial judge found that the proof was insufficient to change custody. In its February 6, 2004 order, the trial court dismissed Father's petition to modify custody, entered a Permanent Parenting Plan modifying the parenting schedule and child support, and awarded Mother attorney's fees. From this order, Father now appeals.

On appeal, Father raises three related issues, alleging that (1) the trial court incorrectly determined that there must be a violation of a specific visitation order to support a change in custody, (2) the trial court erroneously determined that Mother should remain the primary residential parent, and, (3) the trial court erred in awarding attorney's fees to Mother.

In this case, our review of the trial court's findings of fact is *de novo* upon the record, accompanied with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). No such presumption of correctness applies to the trial court's conclusions of law. *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). Appellate courts are reluctant to second-guess the credibility determinations of the trial judge, who is in the best position to judge the parties' credibility. Consequently, considerable deference is afforded to the factual findings of the trial court which hinge on a determination of a witness' credibility, *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996).

In Tennessee, courts strive for resolution of a child custody dispute which provides continuity and stability for the child. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Thus, the original custody decree is considered *res judicata*, to be disturbed only if the non-custodial

parent establishes a material change in circumstances since the initial custody determination. ***Griffin v. Stone***, 834 S.W. 300, 301-02 (Tenn. Ct. App. 1992).

Therefore, the threshold issue is whether there has been a material change in circumstances since the initial custody determination. *See, e.g.*, ***Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002); ***Bridges v. Bridges***, 63 S.W.3d 346, 348 (Tenn. Ct. App. 2001). "[T]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody." ***Kendrick***, 90 S.W.3d at 570 (citing ***Blair v. Badenhope***, 77 S.W.3d 137, 150 (Tenn. 2002)). Nevertheless, several factors have emerged as sound bases for determining whether a material change of circumstances has occurred. ***Id***. These include whether the change occurred subsequent to the existing order sought to be modified, whether the change could not have been reasonably anticipated at the time the existing order was entered, and whether the change "affects the child's well-being in a meaningful way." ***Id***. The burden is on the non-custodial parent to establish the material change in circumstances. ***Bridges***, 63 S.W.3d at 348.

Without question, child abuse that occurs after the initial custody determination and "affect[s] the child's well-being in a meaningful way," ***Kendrick***, 90 S.W.3d at 570, can qualify as a material change in circumstances. A finding of child abuse will support a trial court's determination that a material change in circumstances has occurred, and may be sufficient to support modification of a custody order. ***Griffin v. Stone***, 834 S.W.2d 300 (Tenn. Ct. App. 1992).

In the instant case, the babysitter, Drennen, testified that she had witnessed Mother strike one of the children in the face with a closed fist and remark afterward, "I hope I broke your nose and I hope it bleeds." Mother conceded injuring the child's nose, but indicated that it was accidental, and admitted the statement to which Drennen testified. Drennen also testified that she had witnessed Mother strike another daughter in the face on another occasion, and Mother did not respond to this testimony. Drennen's testimony is disturbing. The trial court did not make express determinations regarding the witnesses' credibility, and the trial court's oral comments after the testimony do not make this clear. Mother was admonished against striking the children and yet the proof was deemed insufficient to change custody; however, Mother was told that it would be a "whole different situation" if she were convicted of the criminal child abuse charges. In awarding attorney's fees to Mother, the trial judge commented that Father's evidence was "pretty weak from the beginning. . . ." Under these circumstances, it is unclear on appeal whether the trial court found that abuse in fact occurred. Having not observed the witnesses' testimony, this Court is not in a position to determine their credibility. Instances of abuse, however, can weigh heavily in ascertaining whether the evidence preponderates in favor of the trial court's apparent finding of no material change in circumstances.

Tennessee Code Annotated Section 36-6-106(a)(8) sets forth factors to be considered in a custody determination, in determining the best interests of the child. Included among these factors is evidence of physical or emotional abuse. In pertinent part, Section 36-6-106(a)(8) provides:

where there are allegations that one (1) parent has committed child abuse. . .the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence and all findings of facts connected thereto.

Thus, Section 36-6-106(a)(8) mandates written findings of fact in a custody determination in which abuse is alleged. In *Nelson v. Nelson*, 66 S.W.3d 896, 902-03 (Tenn. Ct. App. 2001), the trial court was presented with an initial custody determination in a divorce case. The wife alleged that the husband had physically abused her, at times in the presence of the children, during the marriage. *Id.* at 900. The trial court designated the husband as the primary residential parent, based on the wife's admitted adultery, and made no findings on the wife's allegations of abuse. *Id.* at 900-02. The wife appealed. On appeal, this Court commented that the abuse allegations were sharply disputed, and noted the requirement under Section 36-6-106(a)(8) that the trial court make written findings of fact in connection with alleged abuse. *Id.* at 901-02. The appellate court found that the alleged abuse was pivotal in the custody determination. *Id.* at 903. The appellate court observed: "Trial courts have broad discretion in making custody determinations, but courts still must apply the applicable principles of law." *Id.* at 901 (citing *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). Consequently, the Court vacated the permanent custody portion of the divorce decree and remanded the case to the trial court for a written finding of the evidence and specific findings on the wife's allegations of abuse by the husband. *Id.* at 903.

The reasoning in *Nelson* is clearly applicable here. In the absence of findings on the allegations of abuse, we are unable to determine where the preponderance of the evidence lies. Moreover, Father appeals the award of attorney's fees to Mother, and we are likewise unable to determine if the trial court's award was appropriate in the absence of findings on the allegations of abuse. Accordingly, we vacate the portions of the trial court's order dismissing Father's petition for a change in custody and awarding attorney's fees to Mother, and remand for written findings of fact pursuant to Tennessee Code Annotated Section 36-6-106(a)(8).

Father also argues that the trial judge utilized the wrong standard, requiring him to have had an order setting forth his parental residential schedule before the trial court would consider changing custody to designate him as the primary residential parent. After our review of the entire record, it appears that the trial judge's comments, though less than clear, were not indicating that she declined to grant Father's petition to change custody based on the lack of a definite parental residential schedule for him. Therefore, we decline to reverse on this basis.

The decision of the trial court is vacated as set forth above and remanded for proceedings consistent with this opinion. Costs on appeal are assessed to Appellee Sherry Kay Hepler, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE