IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 22, 2012 Session

## WILLIAM PATRICK VAN ERPS  v. HEATHER JACKSON

**Appeal from the Juvenile Court for Hickman County**
**No. 11JV355     Samuel H. Smith, Judge**

---

**No. M2012-00249-COA-R3-JV - Filed September 25, 2012**

---

Mother of child appeals the trial court's designation of Father as primary residential parent and adoption of a residential parenting schedule which gave the parents equal parenting time. Finding no error, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

Jeffrey L. Levy, Nashville, Tennessee, for the Appellant, Heather Jackson.

Douglas T. Bates, III, Centerville, Tennessee, for the Appellee, William Van Erps.

## OPINION

Heather Jackson (Mother) and William Van Erps (Father) bore a child out of wedlock on May 22, 2007. The parties never married, but lived together in Mother's home in Hickman County, Tennessee, for several periods between 2007 and 2011. Father moved out in March of 2011. On August 11, 2011, Father filed a petition in Hickman County Juvenile Court to legitimate the child; with the petition, Father filed a proposed parenting plan. Mother answered, admitting that Father was the father of the child; she contested the parenting plan on the grounds that it was not in the child's best interest.[1]

Trial was held on October 24, October 28, and December 19, 2011. At the conclusion of the trial, the court ruled from the bench as follows:

---

[1] The record does not reflect that Mother proposed a parenting plan.

"I am of the opinion that for [Father] to have any beneficial relationship with this child that he should be the . . . primary residential custodian. I don't like to split equal time, but I think in this case I'm going to, week to week[.] . . . I find that No. 10, I believe of [Tenn.Code Ann. § 36-6-106], "Each parent or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and the ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent/child relationship between the child and both of the child's parents and consistent with the best interest of the child." I find it to be in the best interest of the child that his father be the residential custodian, the 50/50 custody, equal custody."

On January 10, 2012, the court entered an Order memorializing its December 19 ruling, legitimizing the child, designating Father as the primary residential parent, and approving the parenting plan proposed by Father; the court did not make any further findings in the order relative to the designation of Father as primary residential parent or the adoption of the residential parenting schedule.

Mother appeals, contending that the court erred in designating Father as the primary residential parent and in adopting the parenting plan without making specific findings of fact or considering the applicable statutory factors. Mother asserts that the court "assumed" that the best interest of the child would be served by a 50/50 residential parenting schedule and that the only way the court could assure that Father had appropriate parenting time was to designate him as the primary residential parent and implementing a 50/50 residential schedule.

*Standard of Review*

This court reviews custody and visitation decisions *de novo*, with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002); *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). We are reluctant to second-guess a trial court's decision, because of the broad discretion given to trial courts in matters of child custody, visitation and related issues. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999); *see also Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). Thus, we will set aside a trial court's decision only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

*Analysis*

As an initial matter, we do not find that the court erred in not making specific findings of fact in naming Father primary residential parent and in adopting the residential parenting schedule. Tenn. Code Ann. § 36-3-106 provides that custody and visitation determinations are to be made consistent with certain factors.[2] As noted by the court in *Woods v. Tidwell*, "the trial court is not obligated to consider all relevant factors in reaching its decision, . . .

---

[2] The statutory factors are:

(a)(1) The love, affection and emotional ties existing between the parents or caregivers and the child;
(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that, where there is a finding, under subdivision (a)(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a nonperpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody;
(4) The stability of the family unit of the parents or caregivers;
(5) The mental and physical health of the parents or caregivers;
(6) The home, school and community record of the child;
(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;
(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;
(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that, where there are allegations that one (1) parent has committed child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected to the evidence. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;
(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and
(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106 (a).

is not required to list in its opinions or orders each of those factors, [and] is not required to explain how each factor affected its overall determination." *Woods v. Tidwell*, 2011 WL 1662900 at *3 (May 3, 2011) (citing *Woods v. Woods*, M2006-01000-COA-R3-CV, 2007 WL 2198110, at *2 (Tenn. Ct. App. Jul. 26, 2007) (no Tenn. R. App. P. 11 application filed); *Matlock v. Matlock*, M2004-01379-COA-R3-CV, 2007 WL 1452691, at *5 (Tenn. Ct. App. May 16, 2007) (no Tenn. R. App. P. 11 application filed).

Relative to the designation of the primary residential parent and the statutory factors, Father testified that after he moved out of Mother's home she prevented him from seeing his child, required that he take a parenting class and have a psychological examination. He testified that he would not be allowed to see his child often enough if Mother was designated primary residential parent but he would not limit Mother's time with the child if he was designated primary residential parent. Mother testified that Father was abusive to the child, that he had unsecured loaded weapons in his house, and that he encouraged the child to be abusive to animals. She testified that Father had threatened her and that she did not have confidence in his parenting skills.

Twelve witnesses called by both Mother and Father, including friends, neighbors, relatives, employers and fellow employees of each, provided testimony specific to the factors at Tenn. Code Ann. § 36-3-106(a), particularly factors (1), (2), (4), and (5). The testimony regarding Mother's and Father's parenting abilities was conflicting at times. Where there is a conflict in testimony, the trial court is in a superior position to observe the demeanor of the witnesses and evaluate their credibility. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995). As a result, we give "considerable deference" to the trial court's findings of credibility and the weight to be given testimony. *Cutler-Hammer v. Crabtree*, 54 S.W.3d 748, 753 (Tenn. 2001). Measured against this standard, the evidence does not preponderate against the trial court's designation of Father as primary residential parent and adoption of the residential parenting plan.

We do not agree with Mother's assertion that, in designating Father as primary residential parent and in ordering the residential parenting schedule, the court made any assumptions. The court's statement that the child's best interest would be served by a 50/50 residential parenting schedule is consistent with the language of Tenn. Code Ann. § 36-6-106(a) that custody and visitation decisions are to be made "on the basis of the best interest of the child" and that the court "shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child." The statement that Father's relationship with the child would be best served by Father being designated primary residential parent was based on the evidence and, taken in context, simply explained the court's reasoning.

-4-

We find no basis upon which to modify the trial court's designation of Father as primary residential parent or the residential parenting plan.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
RICHARD H. DINKINS, JUDGE