IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 3, 2004

## CHARLES BEARD, SR. v. FLORENCE E. BEARD

**Appeal from the Circuit Court for Hamilton County**
**No. 96DR2548     Jacqueline E. Schulten, Judge**

**FILED FEBRUARY 13, 2004**

**No. E2003-02131-COA-R3-CV**

---

Charles Beard, Sr. ("Father") filed a petition seeking to have primary residential custody of the parties' two children transferred from Florence E. Beard ("Mother") to him. In the alternative, Father sought a reduction in his child support payments. After a hearing, the Trial Court refused to change the custody arrangement, again designating Mother the primary residential parent. The Trial Court did not alter Father's child support payments. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Charles Beard, Sr., *pro se* Appellant.

Erskine P. Mabee, Chattanooga, Tennessee, for the Appellee Florence E. Beard.

# OPINION

## Background

This appeal involves the continuing post-divorce discord between Mother and Father. Their two minor children are currently 8 and 11 years old. It is unclear when the parties were actually divorced since those documents are not in the record on appeal. It is clear, however, that Mother was designated the primary residential parent when they were divorced. An amended Final Judgment apparently was entered in April of 1998 requiring Father to pay child support in the amount of $1,178 per month. The record in this case begins with a petition for contempt filed by Mother in August of 1998 claiming Father was $1,089 in arrears on his child support payments. Father apparently responded by requesting that his child support payments be reduced. A hearing was held on the petition for contempt after which the Trial Court entered an order reducing Father's child support payment to $474 bi-weekly and entering a judgment against Father for $848 in back child support payments plus an additional $201 for unpaid alimony.

The parties continued to file various motions seeking a myriad of relief from the Trial Court. An Agreed Order eventually was entered on July 19, 2001. In this Agreed Order, Mother was again designated the primary residential parent and Father's visitation schedule and other parental rights were set forth in detail. In March of 2002, Father filed a "Petition for Contempt and to Modify." In this petition Father claimed there had been a material change in circumstances warranting a change in custody. Father claimed Mother was living with a man without the benefit of marriage and she repeatedly refused to adhere to the visitation schedule. Father later amended his petition claiming his child support payments should be reduced further if he was not awarded custody of the children. Mother answered the petition denying the pertinent allegations contained therein. Mother also filed a counter-petition, claiming Father's child support should be increased.

Up to this point in the litigation Father was represented by various attorneys. Prior to the hearing on Father's latest petition, his most recent attorney was allowed to withdraw from the case and Father has proceeded *pro se* ever since. While proceeding *pro se*, Father apparently became dissatisfied with Judge Schulten and filed a "Motion For 'RECUSATION' Plaintiff Move to 'DEMAND A NEW & IMPARTIAL JUDGE.'" The record does not contain the Trial Court's ruling on this motion, but it obviously was denied given the fact that Judge Schulten continued to preside over the case. The record does contain unsigned draft documents and unauthenticated and/or hearsay documents which do not appear to have been entered into evidence at the hearing.[1]

A hearing on Father's Petition for Contempt and to Modify was conducted after which the Trial Court entered an Order resolving the various issues. The Order states:

---

[1] For example, the record contains pages 117 - 120 and 127 - 130 from the 1997 Manual of the Tennessee Law Institute. Father apparently relied on several of the case summaries to support his legal arguments.

This cause came on to be heard on the 30th day of June, 2003 … upon the Petition for Contempt filed by … [Husband], the Answer and Petition to Modify filed on behalf of … [Mother], the testimony of witnesses in open Court, the testimony of the parties' children … in chambers, without the parties or attorney being present, by agreement, and the entire record of this cause. From all of which the Court finds and concludes that the Petition for Contempt should be denied and that … [Mother] is not in contempt of Court. However, the Court finds that the prior orders of this Court should be vacated and set aside and that an amended parenting plan should be entered in this cause.

An amended Parenting Plan was entered designating Mother the primary residential parent and setting forth in detail Father's visitation schedule. The Trial Court set Father's child support payment at $474 bi-weekly, which was the same amount he was required to pay prior to the hearing.

While no transcript of the hearing was prepared, each party submitted a Statement of the Evidence and the Trial Court approved the Statement submitted by Mother. As set forth in that Statement and as pertinent to this appeal, Mother testified that: 1) she was employed full-time by the U.S. Postal Service; 2) Father has not been as good of a father as he should be; 3) she purchased clothes for the children which she felt were appropriate; 4) she married her boyfriend, Mr. Stanley, on January 20, 2003, and informed Father of the marriage one week later; 5) she was required to purchase medicine for the children because Father refused to give her the children's medical cards; 6) she denied picking up the children from school when it was Father's turn for visitation; 7) she lives in an eight room house which has three bedrooms; 8) she and her husband do not smoke in the house because one of the children has asthma; and 9) there were no problems between her son and his stepfather.

Mr. Stanley testified he married Mother in January of 2002, not 2003. Mr. Stanley testified the children were well mannered and were not disrespectful to him. He was not aware of an incident where he allegedly made his stepdaughter cry and further denied putting his step-son "out in the rain" as claimed by Father.

Father testified he worked part-time. Father claimed Mother was not adhering to the prior order regarding visitation and other matters. Father testified the children were not showing him proper respect. Father requested that the Trial Court speak with the children outside of the presence of the parties and Mother's attorney. Mother and her attorney agreed to this and the Trial Court met with the children in chambers. After the Trial Court announced its ruling from the bench, Father got out of his chair and stated if that was the Court's opinion, he would just give up all of his rights to his children and have nothing else to do with them.

On appeal, Father's brief does not contain a statement of the issues as required by Tenn. R. App. P. 27(a)(4). However, based on the relief sought by Father, it is clear that he

challenges the Trial Court's refusal to transfer custody of the children to him, as well as the amount of visitation he was awarded. Father also requests that Mother be required to pay one-half of the children's medical bills that were not covered by insurance. We do note that Father did file a "Declaration of Issues for Appeal" with the Trial Court listing twenty-three issues. In these issues, Father claims the Trial Court was biased and challenges many statements allegedly made by the Trial Court and Mother's attorney at the hearing. Father also challenges the admission and exclusion of various items of evidence.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address the Trial Court's implicit conclusion that there was no material change in circumstances which would warrant a change in custody to Father. In *Kendrick v. Shoemake*, 90 S.W.3d 566 (Tenn. 2002), our Supreme Court set forth the appropriate standard to be applied when making such a custody determination. Specifically, the Court stated:

> The principal issue in this case concerns the proper standard to be applied to a petition to modify custody from one parent to the other parent. This issue is largely resolved by our recent decision in *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002). *Blair* involved a custody dispute between a parent and a non-parent. We concluded that once a valid order of custody has been issued, subsequent custody modification proceedings should apply the "standard typically applied in parent-vs-parent modification cases: that a material change in circumstances has occurred, which makes a change in custody in the child's best interests." *Id.* at 148. As explained in *Blair*, the "threshold issue" is whether a material change in circumstances has occurred after the initial custody determination. *Id*. at 150. While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." *Id*. (citations omitted). We note that a parent's change in circumstances may be a

-4-

> material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being.

*Kendrick*, 90 S.W.3d at 570 (footnotes omitted). If a material change in circumstances has been found, then a trial court next must determine whether custody modification is in the child's best interests utilizing the factors set forth in Tenn. Code Ann. § 36-6-106. *Id.*

When determining custody matters, trial courts take into account a number of factors, "including the parents' demeanor and credibility during the . . . proceedings …." *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001) (quoting *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). A trial court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). In the present case, he Trial Court concluded, albeit implicitly, that Father had not shown a material change in circumstances sufficient to warrant a change in custody. The evidence contained in the record on appeal certainly does not preponderate against this factual finding made by the Trial Court and it is, therefore, affirmed.

Father also claims that the Trial Court never ruled on his request to have his child support lowered. The Statement of the Evidence reflects only that Father is working part-time. Father's Declaration of Issues for Appeal states that Mother's attorney was "given" a copy of Father's 2002 income tax return. We believe when the Trial Court set the amount of child support in the Parenting Plan, it implicitly held that Father failed to prove a change in his income sufficient to warrant a reduction in child support payments under applicable law, as opposed to failing to address the issue at all. Father fails to direct this Court to any competent evidence in the record to support his argument that the Trial Court erred when it set his child support payments. If such evidence was presented at trial, then it is incumbent upon Father to make sure such evidence is contained in the record on appeal. Without this evidence, we must presume the Trial Court's factual determinations underpinning its legal conclusions are correct. *See, e.g., Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). In short, there is absolutely nothing in the record before us, such as it is, that would justify a reversal or modification of the Trial Court's conclusion regarding the appropriate amount of Father's child support payments.

Father claims Mother did not pay one-half of the children's medical bills not paid by insurance. There is nothing in the Statement of the Evidence supporting this conclusion. There is, however, Mother's testimony that she had to pay for medication because Father refused to provide her with medical cards. We note that the amended Parenting Plan does require the parties to pay one-half of the medical bills not otherwise covered by insurance. With regard to the issues surrounding the admission and exclusion of evidence, we are unable to determine what evidence was or was not admitted and the reasons therefor. In fact, we cannot determine if Father actually sought

to have any such evidence admitted or excluded at the hearing. In the absence of a transcript of the hearing, we must review the Trial Court's evidentiary rulings and its judgment based on the Statement of Evidence which was approved by the Trial Court. In so doing, we find no reversible error with regard to any remaining issues and affirm the Trial Court's judgment in its entirety.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant Charles Beard, Sr., and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE