IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 24, 2005

## RANDY KENNETH GREEN v. MELISSA RENA GREEN

**Appeal from the Circuit Court for Macon County**
**No. 4501     Clara W. Byrd, Judge**

—————————

**No. M2004-02218-COA-R3-CV - Filed November 29, 2005**

—————————

Father appeals the trial court's failure to grant his petition to modify custody of his three minor daughters to the extent he requested.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Randy K. Green, Lafayette, Tennessee, appellant, Pro Se.

Melissa Green, appellee.

### MEMORANDUM OPINION[1]

        This matter began with the petition of Kenneth Green ("Father") acting *pro se* to modify a July 2003 Order revising the parenting arrangement for his three minor daughters.  The pleadings reflect that Father and Melissa Green ("Mother") were divorced in December of 2000.  While the proceedings before the July 2003 order are not part of the record on appeal, it appears that the parties have been before the trial court with some frequency.  The last order concerning parenting time was entered in July of 2003, in response to Mother's Motion for Contempt and to Set Child Support for Summer Visitation.  At that point, the court ordered that the oldest child, Ashley, was to have

---

[1]Tenn. R. Ct. App. 10 states:

   This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

visitation with Father at her discretion.[2]  The middle child, Heaven, was to be with Father on alternate weekends and could spend additional time with Father during the week at her discretion. The visitation of the youngest daughter, Brandy, remained unchanged from the trial court's earlier order of October 10, 2001, which apparently included Wednesday nights and alternate weekends.[3] The order gave direction as to specific holidays.

The proceeding now before us began on November 14, 2003, when Father petitioned the court to modify the court's prior custody orders to name Father the primary residential parent. Father alleged in his petition that a substantial and material change had occurred since entry of the prior order justifying a change in the parenting arrangement. According to the petition, Mother lived with her boyfriend who Father alleged was a frequent drug user. Because Mother worked the third shift at Wal-Mart five days a week, the three daughters were left with the boyfriend and his three minor sons frequently at night without Mother present. Additionally, Father alleged Mother tried to interfere with Father's regular weekly lunches at school with the youngest daughter. He also alleged Mother told him he needed to change his midweek visitation to another day since she no longer worked on Wednesdays. Finally, he alleged Mother refused to permit "the child" from visiting with him when she wanted. He asked that he be named "the residential sharing parent of the parties' minor child." He also asked for temporary custody.

The court held a hearing on Father's request for temporary custody. The court heard evidence and requested Mother's boyfriend to take a drug test, which he voluntarily did. The test results were negative. The trial court refused to grant Father temporary custody of the children.

The trial court held a hearing on the merits of Father's petition on March 30, 2004. At the time of the hearing, Ashley was 16, Heaven was 11, and Brandy was 7. Father acknowledged that he had no proof of the alleged drug use by Mother's boyfriend. When asked whether Mother was living with her boyfriend when the prior orders were entered, Father acknowledged that he did not know. Father acknowledged that prior to marrying his current wife, they lived together while she was pregnant with their child. As for Mother's interference with visitation, Father was not able to prove or point to a problem of significance.

At the hearing, Father expressed his concerns that Mother's boyfriend was the sole adult in the home while Mother worked the third shift Thursday through Monday nights. In addition to the boyfriend, his sons, aged 12, 13, and 15, were also in Mother's home on alternate weeks.

Mother testified that her boyfriend had moved out of her home eight (8) days before the hearing partly in response to Father spreading rumors that he abused drugs. According to Mother,

---

[2]While the record is not clear, it appears that Ashley was given discretion to visit Father after he struck her twice with a belt upon discovering that she had a tape recorder hidden in her purse for the purpose of recording him with Mother's knowledge. From the record it appears Father now understands that the trial court finds this type of discipline inappropriate.

[3]The October 10, 2001 order is referenced but was not a part of this record on appeal.

the boyfriend did not use drugs.  Since her boyfriend was no longer at her home, Mother testified that the children now stayed with her mother at night while she was at work, although the oldest sometimes stayed at home.

After Father and Mother testified at the hearing, the trial court's comments from the bench indicated concern with leaving the three daughters in the care of Mother's boyfriend several nights a week when he had three sons there as well.  The trial court indicated that if the boyfriend moved back into Mother's home, the court would entertain a petition by Father to rehear the matter.

The court's order was entered on April 13, 2004.  Although Father had asked for joint custody and, apparently, equal residential parenting time,[4] the court did not grant this request.  However, Father's residential parenting time was adjusted and increased.  Mother remained the primary residential parent.  Father was granted visitation with the youngest daughter, Brandy, every Thursday night instead of Wednesday, so she is with her Father on a night when Mother is at work.  The middle daughter, Heaven, no longer has discretion and is to be with Father every Thursday night as well.  Both Heaven and Brandy are with their Father alternate weekends.  In addition, both are to spend every other week with Father in summer.  Ashley, the oldest, will continue to visit Father in her discretion.  In the event there are problems with Ashley staying with her grandmother while Mother works on weekends, then Ashley shall spend each weekend with Father.

Father appeals.  Mother filed no response to Father's appeal.

## II.  STANDARD OF REVIEW

The trial court's conclusions of law are reviewed "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Kendrick v. Shoemake*, 90 S.W.3d 566, 569-70 (Tenn. 2002); *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).  Our review of the trial court's findings of fact is *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W.3d at 569-70; *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984).  When the trial court makes no specific findings of fact, however, we must review the record to determine where the preponderance of the evidence lies.  *Kendrick*, 90 S.W.3d at 569-70; *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Because of the broad discretion given trial courts in matters of child custody, visitation, and related issues, including change in circumstances and best interests, and because of the fact specific nature of such decisions, appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation.  *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999); *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001); *Gaskill v. Gaskill*, 936 S.W.2d 626, 631(Tenn. Ct. App. 1996)).  Accordingly, this court will decline to disturb a parenting arrangement fashioned

---

[4]Father filed a pretrial brief making these requests.  The brief essentially argues that Father should have more parenting time in order to maintain a parent-child relationship.

by a trial court unless that decision is based on the application of incorrect legal principles, is unsupported by a preponderance of the evidence, or is against logic or reasoning. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Further, our analysis is governed by directive that, "It is not the function of appellate courts to tweak a visitation order . . . . When no error is evident from the record, the trial court's ruling must stand." *Eldridge*, 42 S.W.3d at 88.

### III. REQUIREMENTS FOR MODIFICATION

Once a valid order of custody or residential parenting schedule has been entered, the party petitioning to change that order must prove both that a material change of circumstances has occurred and that a change of custody or residential schedule is in the child's best interest. *Kendrick v. Shoemake*, 90 S.W.3d 566, 575 (Tenn. 2002). Such determinations involve a two-step analysis. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003); *Kendrick*, 90 S.W.3d at 570. Only after a threshold finding that a material change of circumstances has occurred is the court permitted to go on to make a fresh determination of the best interest of the child. *Kendrick*, 90 S.W.3d at 569; *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002); *see also* Tenn. Code Ann. § 36-6-101(a)(2)(B) and (C).

In determining whether such a change of circumstances has occurred, the court should consider several factors. *Blair*, 77 S.W.3d at 150.

> Although there are no bright-line rules for determining when such a change has occurred, there are several relevant considerations: (1) whether the change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way.

*Cranston*, 106 S.W.3d at 644, citing *Kendrick*, 90 S.W.3d at 570, and *Blair*, 77 S.W.3d at 150.

Father's petition to modify was filed on November 14, 2003, the matter was heard on March 30, 2004 and the trial court's decree was entered on April 13, 2004. When the matter was heard and decided by the trial court, the following version of Tenn. Code Ann. § 36-6-101(a)(2)(B) (Supp. 2003), in pertinent part, was in effect[5]:

> (B)     If the issue before the court is a modification of the court's prior decree pertaining to custody or a residential parenting arrangement, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of

---

[5]The statute has since been amended effective May of 2004 to create separate provisions for revision of a custody order and revision of a residential parenting schedule. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B) and (C) (Supp. 2004).

harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances which make the parenting plan no longer in the best interest of the child.

As the statute and case law now make clear, a material change of circumstance does not require a showing of a substantial risk of harm to the child. Tenn. Code Ann. § 36-6-101(a)(2); *Cranston*, 106 S.W.3d at 64; *Kendrick*, 90 S.W.3d at 570. Additionally, "a parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being." *Kendrick*, 90 S.W.3d at 570.

Father was unable to present any proof that Mother's former boyfriend used drugs or still lives with Mother. The trial court made clear its concerns about having teenage children unrelated by family or marriage together five nights a week without Mother present. The court invited Father to ask the court to reconsider if Mother and her boyfriend resume their residential arrangement. The trial court adjusted Father's residential parenting so that he has the youngest two daughters on one of the nights Mother works. Father also has the two younger daughters on alternate weekends for two (2) nights while Mother works. Concerns regarding the grandmother's supervision of the oldest daughter while Mother was at work were also addressed. Father was unable to show that there had been the requisite change in circumstances warranting further revision.

The trial court's order does not include explicit findings as to either material change of circumstances or best interest. However, the adjustments made by the trial court and the testimony at the hearing indicate that the court addressed two specific situations. First, Mother's work schedule had changed so that she no longer worked on Wednesday nights, so the court changed the overnight weekly visitation of the two younger girls with Father to Thursday nights. Second, the earlier decision to leave the decision of whether to spend one night during the week with Father to the discretion of Heaven had proved to create problems, so the trial court removed that discretion and ordered the weekly visit.

Father did not prove any other change in circumstances that affects the children's well being. On appeal, he does not argue that such a change was proved. Instead, Father argues he should have more residential parenting time with the children. He asserts he is entitled to greater parenting time because Tenn. Code Ann. § 36-6-601 requires that any parenting arrangement allow him to maintain a parent-child relationship; because he has a fundamental right to care and custody of his children which cannot be abridged absent a compelling state interest; and because the parenting arrangement denies him equal protection of the law. None of these arguments address the legal requirements applicable to a request for modification of an existing valid parenting arrangement.

By all accounts, the daughters love both their parents and are doing well in school. It appears at the suggestion of the court that Father earned his GED to be able to better assist the girls in school. The oldest daughter has two part time jobs and is very involved in dance. Mother is involved in cheerleading, and Father has lunch with the youngest child at school once a week. Based on the

record before this court, these are loving, attentive and involved parents who want what is best for their children. The arrangement fashioned by the trial court, with the minor changes ordered, is supported by the law and the evidence and is reasonable.

The judgment of the trial court is affirmed. Costs are assessed against appellant, Randy Green, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE