# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 28, 2013

## JOSEPH WINFRED REEVES v. FELICIA KIMBERLY REEVES

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-000361-07    John R. McCarroll, Judge

---

### No. W2012-00267-COA-R3-CV - Filed April 30, 2013

---

At the time of the parties' divorce, both parties lived in Tennessee, and Mother was named primary residential parent. Shortly thereafter, Mother was allowed to relocate to Georgia with the children, and Father's requests that he be named primary residential parent were denied. Following the move, the parties were unable to agree to a parenting plan, and the circuit court resolved the remaining parenting issues and transferred future disputes to Georgia. On appeal, the *pro se* parties raise numerous issues related to various decisions of the trial court. We affirm in part and we reverse in part, and we remand for further proceedings.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Joseph Winfred Reeves, Lakeland, Tennessee, appellant, *pro se*

Felicia K. Johnson (Reeves), Warner Robins, Georgia, appellee, *pro se*

## OPINION

### I.   FACTS & PROCEDURAL HISTORY[1]

Joseph W. Reeves ("Father") and Felicia K. Reeves ("Mother") were divorced in August 2008 by entry of a "Final Decree of Divorce" in the Circuit Court of Shelby County, Tennessee.  The parties have three minor daughters.  The Final Decree specifically incorporated a Permanent Parenting Plan entered on March 28, 2008, subject to certain modifications outlined in the Final Decree.  Mother was named the children's primary residential parent; Mother was awarded 240 days with the children, and Father was awarded 125 days with the children including every other Thursday at 3:15 p.m. until Monday morning.[2]

Apparently in 2009, Mother petitioned the circuit court to allow her to relocate to Atlanta, Georgia, with the children, and Father responded by seeking to be named the primary residential parent.[3]  By virtue of a September 2009 Order, Mother was allowed to relocate to Atlanta with the children, and a temporary visitation schedule was entered pending Father's "agree[ment] to try to move to the Atlanta area by January 1, 2010[.]"  The Order stated that if Father, in fact, relocated to Atlanta by January 1, 2010, that the "current March 28, 2008 Permanent Parenting Plan will go into effect in Georgia[.]"

In January 14, 2010, Father petitioned to reduce his child support obligation. Thereafter, in April 2010, Mother filed a Petition for Contempt of Court against Father, claiming, among other things, that Father had failed to move to Georgia, but that he was attempting to exercise visitation as if he *had* relocated while ignoring the after-school pick-up duties required upon relocation.  In response, Father filed a counter-petition for contempt as well as a petition for a change of custody alleging as a material change in circumstances, among other grounds, that Mother had impeded his parenting time and telephone contact with the children, that she had made derogatory remarks about Father in the children's presence, that she had failed to communicate with Father regarding the children, and that she had made unilateral decisions regarding the children in violation of the Permanent Parenting

---

[1]Since their divorce, the *pro se* parties have filed numerous pleadings, documents, exhibits, etc., resulting in a voluminous record.  We will attempt to limit our factual recitation to that relevant to this appeal.

[2]Curiously, in a later contempt petition, Mother states that the Permanent Parenting Plan provided for Father to exercise parenting time *each* Thursday to Monday.

[3]We rely upon the factual recitation included in the trial court's Order, as we have been unable to locate the parties' petitions within the record.

Plan.

Hearings were held over several days in 2010, after which the trial court issued its February 17, 2011 "Findings of Fact [and] Conclusions of Law," in which it reduced Father's child support obligation, it declined to find either party in contempt, and it found a material change in circumstances had occurred "because of Mother's admitted and unjustified interference with Father's parenting time[.]" The trial court conducted separate hearings related to the children's best interest in 2011, after which it issued its June 3, 2011 "Findings of Fact and Conclusions of Law on the Best Interest of the Minor Children," in which it outlined at length its consideration of the factors set forth in Tennessee Code Annotated section 36-6-106. While the court acknowledged that it did not condone Mother's interference with Father's parenting time, it found that other factors weighed in favor of Mother remaining the primary residential parent, and therefore, it concluded that Mother's interference was insufficient to warrant a change in custody. Taking into consideration the significant distance between the parties, the trial court apparently urged the parties to work out a new Permanent Parenting Plan.

At some point prior to the trial court's entry of its June 3, 2011 Findings of Fact, Mother filed pleadings in the Superior Court of Houston County, Georgia, to domesticate the Tennessee rulings. However, her petition was dismissed due to the proceedings pending in Tennessee.

On December 2, 2011, Father filed a "Motion to Transfer Jurisdiction to the Superior Court of Houston County in the State of Georgia" claiming that the parties had been unable to agree to changes to the 2008 Permanent Parenting Plan. He also filed a "Motion to Appoint Guardian ad Litem or Counselor for the Children to Recommend if Modifications to the Permanent Parenting Plan are Necessary" alleging that Mother continued to interfere with his parenting time, to thwart his communication with the children, and to use profanity in her communications with Father.

On December 9, 2011, pursuant to Tennessee Code Annotated section 36-6-213, a conference call was held between the parties, Shelby County Circuit Court Judge McCarroll, and Houston County, Georgia, Superior Court Judge Lumsden. All call participants agreed "that Georgia is the most convenient forum for the Parties[,]" and therefore, that *future* issues would be decided there.

Following the conference call, a hearing was held by the Shelby County Circuit Court to resolve the remaining parenting issues. Thereafter, on December 14, 2011, the Shelby County Circuit Court entered an "Order Transferring Case to Georgia; Modifying Existing Parenting Plan; Denying Father's Petition for the Appointment of a Guardian ad Litem"

("December 14, 2011 Order"). In the December 14, 2011 Order, the Circuit Court modified the residential parenting schedule to allow Father Friday to Monday visitation every other week and to provide that the parent exercising parenting time shall pay transportation costs, it determined that final decision-making authority resided with the courts, and it denied Father's request for the appointment of a guardian *ad litem* because it found the "issue is moot due to the resolution of parenting issues by the Parties and the Court." Finally, the December 14, 2011 Order transferred all future disputes to Georgia. It is from the December 14, 2011 Order that Father appeals.[4]

## II. ISSUES PRESENTED

Father presents the following issues for review, as we perceive them:

1.     Whether the trial court lacked the authority to modify the residential parenting schedule after determining that Georgia was a more convenient forum; and

2.     Whether the trial court erred in denying his request for the appointment of a guardian ad litem.

Additionally, Mother presents the following issues, as restated:

1.     Whether the trial court erred in designating the courts as final decision maker;

2.     Whether the trial court erred in failing to adjust Father's child support obligation after decreasing his visitation;

3.     Whether the trial court erred in failing to specifically transfer the child support order to Georgia;

4.     Whether the trial court erred in failing to include work-related childcare expenses in calculating the presumptive child support in the February 2011 Findings of Fact and Conclusions of Law;

5.     Whether the trial court erred in failing to award Mother her attorney fees, court costs, and travel costs pursuant to Tennessee Code Annotated section 36-5-103©; and

---

[4]On August 9, 2012, this Court entered an Order indicating that certain matters had not been adjudicated, and directing Father to obtain entry of a final judgment. On August 17, 2012, the Shelby County Circuit Court entered a "Final Judgment" resolving the previously un-adjudicated issues. Thus, on November 20, 2012, this Court entered a second Order stating that the order appealed is now final.

6.  Whether the trial court erred in failing to require Father to reimburse her for unused airline tickets.

For the following reasons, we affirm in part and we reverse in part, and we remand for further proceedings.


### III. DISCUSSION

### A. Modification of Residential Parenting Schedule

On appeal, Father first argues that the trial court lacked authority to modify the residential parenting schedule pursuant to its December 14, 2011 Order because the conference call participants had determined that Georgia was the most convenient forum.

Tennessee Code Annotated section 36-6-222 provides in relevant part:

(a) A court of this state which has jurisdiction under this part to make a child-custody determination[5] may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. . . .

. . . .

(c) If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings *upon condition that a child-custody proceeding may be promptly commenced in another designated state* and may impose any other condition the court considers just and proper.

(emphasis added).

As stated in the December 14, 2011 Order, Mother filed pleadings in the Superior Court of Houston County, Georgia, to domesticate the Shelby County Circuit Court's June 3, 2011 "Findings of Fact and Conclusions of Law on the Best Interest of the Minor Children[.]" However, the Superior Court dismissed Mother's petition due to the unresolved parenting issues in Tennessee. Because a child-custody proceeding could not be promptly

---

[5]"'Child custody proceeding' means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." **Tenn. Code Ann. 36-6-205(4)**.

commenced in Georgia, the Circuit Court was not required to stay the proceedings. This issue is without merit.

## B. *Appointment of Guardian Ad Litem*

On appeal, Father also argues that the trial court erred in failing to appoint a guardian *ad litem* for the children prior to altering the Permanent Parenting Plan.[6] Father claims that the trial court failed to consider certain factors set forth in Tennessee Supreme Court Rule 40A, and that it should have appointed a guardian ad litem based upon the trial court's findings that Mother interfered with Father's parenting time, that she regularly uses profanity and refers to Father in derogatory terms in communications with Father, and that ongoing animosity exists between the parties.[7]

Tennessee Supreme Court Rule 40A governs the appointment of guardians ad litem in custody proceedings.[8] The rule sets forth certain factors a court is to consider when determining whether to appoint a guardian ad litem. On appeal, Father cites two factors which he claims the court failed to consider: "(6)(v) any higher than normal level of acrimony indicating the parties' lack of objectivity concerning the needs and best interests of the child;" and "(6)(vi) any interference, or threatened interference, with custody, access, visitation, or parenting time, including abduction or risk of abduction of the child[.]" **Tenn. Sup. Ct. R. 40A(6)(v), (vi)**.

The decision of whether or not to appoint a guardian ad litem in a custody proceeding is discretionary with the trial court. **Tenn. Sup. Ct. R. 40A, Section 3(a)** ("[I]n a custody proceeding the court *may* appoint a guardian ad litem when the court finds that the child's best interests are not adequately protected by the parties and that separate representation of the child's best interests is necessary.") (emphasis added). Tennessee Supreme Court Rule 40A, Section 3(b) expressly states that "Courts should not routinely appoint guardians ad

---

[6]From the record it appears that a guardian ad litem represented the children's interests during the initial custody proceedings. Father then filed motions seeking re-appointment of a guardian ad litem on August 18, 2010 and December 2, 2011. Because Father's brief does not reference the August 18, 2010 motion, we presume he appeals the trial court's denial of his December 2, 2011 request.

[7]These findings were included in the trial court's June 3, 2011 "Findings of Fact and Conclusions of Law on the Best Interest of the Minor Children."

[8]Tennessee Supreme Court Rule 40A, Section 1(a) defines "custody proceeding" as "a court proceeding, other than an abuse or neglect proceeding, in which legal or physical custody of, access to, or visitation or parenting time with a child is at issue, including but not limited to divorce, post divorce, paternity, domestic violence, contested adoptions, and contested private guardianship cases."

litem in custody proceedings. Rather, the court's discretion to appoint guardians ad litem shall be exercised sparingly. In most instances, the child's best interests will be adequately protected by the parties."

As stated above, the trial court denied Father's motion to appoint a guardian ad litem because it considered the issue moot "due to the resolution of parenting issues by the Parties and the Court." Additionally, at the December 9, 2011 hearing, the trial court stated:

> But I can tell y'all, just from having been with you, I don't think y'all really need the expense of a guardian ad litem. Both of you are very intelligent people. The children aren't in any kind of danger. There are no drugs and alcohol. I know you've had your differences, but you don't need a guardian ad litem.
> . . . .
> The two of you[, Mother and Father,] need to get along, and whether that's ever going to happen, I don't know. I don't think it's something the guardian ad litem could solve. The guardian ad litem is for the children and for them to be protected. They don't need protection from y'all. It's the fact that the two of you can't get along is the problem.
> Both of you are loving parents. Both of you are extremely intelligent people. It's just whatever the differences are between the two of you.

Although parental acrimony is to be considered in the determination of whether to appoint a guardian ad litem, acrimony does not necessitate such appointment. The trial court obviously considered the appropriate factors–including the children's needs and circumstances, the expense of appointing a guardian ad litem, the acrimony between the parents, the children's safety, and the children's best interests–before ultimately concluding that a guardian ad litem was unnecessary. We find no evidence to indicate that the trial court abused its discretion in reaching this conclusion.

### C. Designation of Final Decision Maker

In its December 14, 2011 Order, the trial court determined that "[i]n the event the parents are unable to reach a decision, that issue shall be presented to a court of proper jurisdiction for a final decision."[9] On appeal, Mother argues that she should have been granted final decision-making authority based upon the parties' alleged prior inability to jointly make decisions regarding the children and upon the significant distance between the

_____

[9]The March 28, 2008 Permanent Parenting Plan had designated the guardian ad litem as the final decision maker.

parties' residences–Mother's in Atlanta and Father's in Memphis.

When reviewing a trial court's custody decision, we examine its factual findings *de novo*, with a presumption of correctness. **Tenn. R. App. P. 13(d)**. Appellate courts are reluctant to second-guess a trial court's custody decision where so much depends on the trial court's assessment of the witnesses' credibility. *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001); *Steen v. Steen*, 61 S.W.3d 324, 328 (Tenn. Ct. App. 2001). Trial courts are given "wide discretion in matters of child custody, and reviewing courts will not interfere except upon a showing of erroneous exercise of that discretion." *Mimms v. Mimms*, 780 S.W.2d 739, 744045 (Tenn. Ct. App. 1989).

Tennessee Code Annotated section 36-6-407 sets forth the criteria a trial court is to consider when allocating parenting responsibilities:

(1) The existence of a limitation under § 36-6-406;[10]
(2) The history of participation of each parent in decision making in each of the following areas: physical care, emotional stability, intellectual and moral development, health, education, extracurricular activities, and religion; and whether each parent attended a court ordered parent education seminar;
(3) Whether the parents have demonstrated the ability and desire to cooperate with one another in decision making regarding the child in each of the following areas: physical care, emotional stability, intellectual and moral development, health, education, extracurricular activities, and religion; and
(4) The parents' geographic proximity to one another, to the extent that it affects their ability to make timely mutual decisions.

"There can be no doubt that it is in the best interest of the children that decisions about their welfare be made without undue delay and stress." *Hansen v. Hansen*, No. M2008-02378-COA-R3-CV, 2009 WL 3230984, at *2 (Tenn. Ct. App. Oct. 7, 2009). "'[W]here the parents are unable to agree on matters of great importance to the welfare of their minor children, the primary decision-making authority must be placed in one parent or the other.'" *Id.* (quoting *Coley v. Coley*, No. M2007-00655-COA-R3-CV, 2008 WL 5206297, at *7 (Tenn. Ct. App. Dec. 12, 2008)).

In support of her contention that joint decision-making is unworkable in this case, Mother cites certain findings made by the trial court in support of is designation of Mother as primary residential parent:

---

[10]No custody/visitation limitation is applicable here.

Mother, as the primary caregiver all the children's lives, has raised the children in a stable and satisfactory environment. Mother's designation as primary caregiver is important to the continuity of the children[']s lives. The only environment the children have lived in since the divorce is with Mother as the primary caregiver both in Tennessee and Georgia. Mother has appropriately discussed uniquely feminine issues with her daughters who are fourteen . . . , ten . . . , and six . . . . Mother is involved with the children in their school, extracurricular, sporting, and other activities in Georgia.

. . . .

Mother is aware of and concerned about [one child's] allergic reaction to dogs and cats. Father has disagreed with Mother regarding the necessity of keeping [the child] away from cats or dogs despite a positive finding for animals by Joe S. Levy, M.D., on April 18, 2006. [The child] has continued to have problems and Mother has continuously requested that [the child] not be around animals because of [the child's] continuing symptoms such as runny eyes, coughing, sneezing, etc. Mother has advised Father of [the child's] allergy problems yet Father continues to expose [the child] to animals, including bringing a cat or cats with him on his parenting time in Georgia. Father testified that grooming the cats would relieve the problem of pet dander, but no expert proof was ordered in this regard.

Additionally, Mother cites to specific pages of the hearing transcript where she claims "the trial court made several references to the fact that [Father] and [Mother] do not get along." Our review of these citations reveals the trial court's statements that Mother and Father have "had [their] differences" and that they "can't get along" and may never be able to. Our independent review of the record further reveals the trial court's concern that Mother has "[f]ailed to consult Father about extra-curricular activities and school choices for the girls[.]"

While we express some hesitation in granting Mother's request to be named final decision maker, the parties' demonstrated inability to cooperate, coupled with the significant distance between them, necessitates that primary decision-making authority be placed in one parent. Because Mother is the primary residential parent, she is the obvious person with whom to place this responsibility. *See Hansen*, 2009 WL 3230984, at *2.

## D. Father's Child Support Obligation

Next, Mother contends that the trial court erred in failing to increase Father's child support obligation to correspond with his decreased parenting time. Pursuant to the 2008 Final Decree of Divorce and the Permanent Parenting Plan, Father was awarded 125 days per year with the children and he was ordered to pay $1,911.00 per month in child support. However, in 2011, Father's child support obligation was reduced to $1,401.00 per month based upon Mother's increased income and her non-incurrence of previously-claimed work-related childcare expenses. Additionally, pursuant to the December 14, 2011 Order appealed, Father's parenting time was decreased by approximately twenty-four days per year based upon a change in his visitation from every other *Thursday* to Sunday to every other *Friday* to Sunday.

Tennessee Code Annotated section 36-5-101(g)(1) provides that "[*u*]*pon application of either party*, the court shall decree an increase or decrease of [child] support when there is found to be a significant variance . . . between the guidelines and the amount of support currently ordered[.]" (emphasis added). Mother is correct that, after decreasing Father's parenting time in the December 14, 2011 Order, the trial court did not adjust–or even address–Father's child support obligation. However, our review of the record reveals no indication that Mother sought to increase Father's child support obligation in the trial court.[11] Accordingly, we conclude that the trial court did not err in failing to adjust Father's child support obligation.

## E. Transfer of Child Support Order

In its December 14, 2011 Order, the Shelby County Circuit Court transferred the case to the Superior Court of Houston County, Georgia, pursuant to Tennessee's version of the UCCJEA, specifically Tennessee Code Annotated section 36-6-222, which allows a court to decline to exercise jurisdiction in a *custody determination* case due to the forum's inconvenience. "The correlative to the UCCJEA is the Uniform Interstate Family Support Act ('UIFSA'), which governs interstate jurisdiction questions involving *child support*." ***See Earls v. Mendoza***, No. W2010-01878-COA-R3-CV, 2011 WL 3481007, at *10 (Tenn. Ct. App. Aug. 10, 2011) (citations omitted) (emphasis added). The UIFSA provides:

> (a) A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child support order:

---

[11]In her "Proposed Permanent Parenting Plan," Mother sought to eliminate Father's alternating Thursday visitation; however, the "Child Support" section of the proposed plan was left blank.

(1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) Until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

**Tenn. Code Ann. § 36-5-2205(a)(1)-(2)**. The comments to the statute explain:

This section is perhaps the most crucial provision in UIFSA . . . [T]he issuing tribunal retains continuing, exclusive jurisdiction over a child support order, except in very narrowly defined circumstances. As long as one of the individual parties or the child continues to reside in the issuing state, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its order[.]
. . . .
According to the logical implication of Subsection (a)(2), the issuing state may also lose its continuing, exclusive jurisdiction to modify if the parties consent in writing for another state to assume jurisdiction to modify (even though one of the parties or the child continues to reside in the issuing state). The only statutory requirement for the parties to divest the issuing tribunal of its continuing, exclusive jurisdiction is the filing of a written agreement to that effect with that tribunal.

**Tenn. Code Ann. § 36-6-2205 Cmt.**

On appeal, Mother claims that the trial court erred in failing to specifically transfer jurisdiction of the child support order to Georgia. She maintains, without citation to the record, that the UIFSA requirements have been met because "both [Father] and [Mother] have filed written consents in [Tennessee], the issuing state, to permit [Georgia] to assume continuing, exclusive jurisdiction over the order."

If Mother is correct that the requisite written consents have been filed in Tennessee, a specific court order transferring jurisdiction is presumably unnecessary. In any event, Mother has failed to supplement the record to support her argument that the UIFSA requirements have been met. Accordingly, we find that Mother has not demonstrated entitlement to relief on this issue.

### F. Work-Related Childcare Expenses

As stated above, the 2008 Final Decree of Divorce specifically incorporated the March 28, 2008 Permanent Parenting Plan, subject to certain modifications outlined in the Final Decree. One such modification provided that "[Father] shall be allowed to pick the minor children up from school when his work schedule allows him to be in town at the children's dismissal." According to Mother, the modification was allowed "to eliminate the need to add work related child care expenses (required for two of the children) into the child support worksheet."[12]

Pursuant to a September 2009 Order, Mother was allowed to relocate to Atlanta with the children, and Father immediately expressed his intent to relocate to Atlanta by the end of 2009. The September 2009 Order provided that if Father, in fact, relocated to Atlanta by January 1, 2010, the "current March 28, 2008 Permanent Parenting Plan will go into effect in Georgia" subject to certain modifications unrelated to child support.

Father, however, did not relocate to Atlanta, and on appeal, Mother claims that she incurred work-related childcare expenses–for which Father did not pay child support–because Father was unable to retrieve the children from school as planned. **(Br. 25)**. Specifically, Mother argues that the trial court erred in failing to include her work-related childcare expenses when it reconsidered Father's child support obligation in February 2011.

In light of Mother's contention that the requisite written consents have been given to transfer the child support order to Georgia, we find it inappropriate for this Court to address child support modification. Our declination to address Mother's right to receive child support for work-related child care expenses, however, should not preclude Mother from reasserting this argument before the appropriate tribunal.

### G. Mother's Expenses

As outlined above, when this case was appealed to this Court, we determined that certain matters had not been adjudicated, including: (1) Mother's request for attorney fees as set forth in her April 1, 2010 "Petition for Contempt of Court[;]" and (2) Mother's request for three years of additional alimony payments based on the expenses incurred in defending allegedly frivolous litigation as set forth in her July 1, 2010 "Answer to Counter-Petition for Civil Contempt, Injunctive Relief, and Change of Custody[.]" In its August 17, 2012 "Final

---

[12]In her brief, Mother includes a purported quotation of the trial court's oral explanation that Father's ability to retrieve the children eliminated the need to include work-related childcare expenses in the child support calculation. Unfortunately, this quotation is not found at the cite referenced.

Judgment," the trial court denied Mother's requests for attorney fees and additional alimony payments, finding that both parties had enjoyed some success in the litigation. At the August 17, 2012 hearing on attorney fees, the trial judge specifically rejected Mother's claim that she was entitled to additional alimony to cover expenses incurred in defending against frivolous litigation. The trial judge explained:[13]

> So it wasn't like one side just had nothing on their argument. Both of you, I thought, had very valid arguments, very good arguments. Both of you are very loving parents, and you want to take care of your children, but I felt like that given the nature of the case that each side ought to pay all of their own expenses, and there was no basis for awarding further alimony.

On appeal, Mother correctly points out that in issuing the "Final Judgment," the trial judge relied upon his own recollection as well the parties' recollections as to whether he had previously denied the requests for attorney fees.[14] She argues that the trial court erred because it denied her request for attorney fees without considering Tennessee Code Annotated section 36-5-103(c), section 36-5-121(I), or section 36-6-236. Additionally, she claims entitlement to "attorney fees, travel expenses for herself and witnesses, childcare fees incurred to travel out of state overnight for hearings, hotel expenses, court fees, filing fees, transcript fees, and other fees associated with defending the law[suit] brought forth by [Father]" because, she claims, Father "breached the contractual provisions in the September 9, 2009 *Order on Father's Amended Petition in Opposition to Relocation and to Modify Final Decree of Divorce and Mother's Petition to Alter Visitation Schedule*" when he failed to relocate to Georgia.

> The UCCJEA, Tennessee Code Annotated section 36-6-236, provides that

> The court *may* award the prevailing party . . . necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings.

(emphasis added). Tennessee Code Annotated section 36-5-103(c) provides:

---

[13]This statement is taken from an excerpt of the August 17, 2012 hearing.

[14]Mother claimed that the trial court never ruled on her motions, but Father claimed that the trial court specifically denied her requests for attorney fees. The trial court recalled previously denying Mother's motions, but it acknowledged that apparently orders to that effect were never entered.

(c) The plaintiff spouse *may* recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the *discretion* of such court.

(emphasis added). Finally, Tennessee Code Annotated section 36-5-121(I), cited in Mother's appellate brief, sets forth a list of factors trial courts should consider when determining whether to award spousal support.

At the outset we note that, in the trial court, Mother failed to specifically cite to any of the statutes which she now claims the trial court erred in failing to consider. In any event, we find that there is no evidence to indicate that the trial court abused its discretion in denying Mother's requests. First, the trial court specifically rejected Mother's argument that Father had instituted frivolous litigation and that she was entitled to additional alimony on that basis. The trial court correctly noted that Father had successfully argued that a material change in circumstances had occurred, and the record demonstrates that numerous pleadings were filed by *both* parties. Additionally, sections 36-6-236 provides for an award of attorney fees to the *prevailing* party, and again, both parties enjoyed some success in this litigation. Moreover, we cannot say that the trial court abused its discretion in failing to consider section 36-5-103(c), as Mother suggests, because the section merely affords the trial court discretion to award attorney fees in custody cases, and the trial court obviously understood its authority to make such an award, although it ultimately declined to do so apparently concluding that both parties were able to cover their own expenses. Finally, we reject Mother's claim that she is entitled to any award based upon an alleged breach of contract. Notwithstanding other problems with this argument, there is no indication that Mother raised this claim in the trial court. In sum, we affirm the trial court's denial of Mother's requests for attorney fees and other expenses incurred in the trial court.

### H. Airline Ticket Reimbursement

Finally, Mother argues that the trial court erred in failing to require Father to reimburse her for six airline tickets she claims went unused in the summer of 2012 when Father "refused to drive the minor children to the Memphis International Airport and put them on the plane at the end of his visitation."

Based upon Father's alleged failure to return the children in the summer of 2012, Mother filed a "Petition for Contempt of Court/Emergency Injunction to Temp[o]rarily Suspend Visitation" on June 27, 2012. A hearing was held on July 5, 2012, after which, the trial court entered an "Order Modifying Parenting Plan of March 28, 2008 and December 14, 2011." In the order, the court explained that the "Parties were in disagreement as to the proper procedure to follow when the girls were flying from Atlanta to Memphis or vice versa" and it ordered that

> The parent who has completed their parenting time and is returning the girls to the other parent by airplane should drive the girls to the airport to be placed on the flight to the other parent[']s home. . . . If the girls miss the flight because of the fault of the parent who drives the girls to the airport, the other shall be entitled to be reimbursed for whatever expense result[s] to them because of the other parent[']s fault.

On appeal, Mother contends that the trial court "was completely silent" on airline ticket reimbursement; however, there is no evidence to indicate that reimbursement was ever requested. Mother's "Petition for Contempt of Court/Emergency Injunction to Temp[o]rarily Suspend Visitation" makes no such request, the trial court's "Order Modifying Parenting Plan of March 28, 2008 and December 24, 2011" does not reference a request for reimbursement, and we have located no transcript of the July 5, 2012 hearing in the record to determine whether the issue was considered. Accordingly, we deem this issue waived because "[i]ssues not raised in the trial court cannot be raised for the first time on appeal." *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006).

## IV. CONCLUSION

For the aforementioned reasons, we affirm in part and we reverse in part. Costs of this appeal are taxed equally to Appellant, Joseph W. Reeves, and Appellee, Felicia K. Reeves, for which execution may issue if necessary. This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
ALAN E. HIGHERS, P.J., W.S.